**PORTLAND SAVINGS BANK**

v.

**Patricia M. LANDRY.**

Supreme Judicial Court of Maine.

April 21, 1977.

Perkins, Thompson, Hinckley & Keddy by D. Brock Hornby, James R. Flaker, Portland, for plaintiff.

Verrill Dana Philbrick Putnam & Williamson by John W. Philbrick, Portland, for defendant.

Jensen Baird Gardner Donovan & Henry by Merton G. Henry, Portland, for amicus curiae.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK and ARCHIBALD, JJ.

* Mr. Justice Weatherbee sat at argument and participated in consultation but died prior to preparation of opinion.

ARCHIBALD, Justice.

On October 1, 1975, an alternative procedure for the foreclosure of real estate mortgages became effective. P.L.1975, ch. 552, §§ 6321–25 (14 M.R.S.A. §§ 6321–25). The newly adopted act provided that such mortgages could be foreclosed by instituting a civil action in either the Superior or District Courts.[1] Section 6322 authorizes redemption "within 90 days of the date of the judgment" that a breach exists, establishing the amount of the arrearage, and authorizes the mortgagee to sell the property unless the debt is paid within ninety days. The act also requires the mortgagee to account to the mortgagor for any surplus received following the foreclosure sale.

On September 21, 1972, the defendant executed a conventional real estate mortgage, running to the plaintiff, as security for her promissory note of $17,100.00 which bore interest at 7½%. The plaintiff on *October 14, 1975*, instituted a civil action in the District Court seeking the relief authorized by the newly enacted statute. By her responsive pleading the defendant admitted that the mortgage was then in default. On a motion for summary judgment the District Court entered a "judgment of foreclosure and sale" from which the defendant seasonably appealed.[2]

The issue is brought into sharp focus by the defendant's asserted affirmative defense, namely:

"Title 14 M.R.S.A., Sec. 6321 et seq. are unconstitutional *as applied to the Defendant*, in that said statutory provisions unlawfully abridge the statutory time of redemption in effect at the time of the giving of the mortgage by the Defendant to the Plaintiff, and *therefore impaired the obligations of the contract between the parties*.[3] (Emphasis supplied.)

We sustain the appeal.

Public Laws of 1975, ch. 552, by reducing the basic redemption period to ninety days, broke sharply with the traditional period of redemption in the State of Maine. From 1837 until 1907 the period of redemption, by whatever method foreclosure was accomplished, remained at three years. *See* R.S. 1903, ch. 92, §§ 4, 7. Public Laws of 1907, ch. 163, §§ 1, 2, reduced the period of redemption under any of the acceptable methods of foreclosure to one year, and this period was retained in all the statutory revisions thereafter and remains the same today except when foreclosure is sought under the provisions of P.L.1975, ch. 552.[4]

As we have previously pointed out, we are concerned only with the constitutionality of the 1975 act as applied to the foreclosure of the defendant's mortgage which had been executed three years prior to the 1975 enactment.

Article I, § 10 of the United States Constitution provides in pertinent part:

"No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."

In its Declaration of Rights the Constitution of Maine, art. I, § 11, contains a similar provision.

It is well settled that the law in effect at the time of the execution of a contract becomes part of that contract.

---

1. Foreclosure by civil action was an *alternative* to the already existing methods by which real estate mortgages might be foreclosed. *See* 14 M.R.S.A. §§ 6201(1)(2)(3), 6203(1)(2). Each of these methods allowed one year for redemption. 14 M.R.S.A. §§ 6202, 6204.

2. This appeal was taken pursuant to 14 M.R. S.A. § 1901, amended by P.L.1975, ch. 552, which provides that

"any party shall appeal from a District Court judgment in action of foreclosure and sale directly to the Supreme Judicial Court within 30 days."

3. The defendant does not contend, nor could she, that the statute is unconstitutional as applied to mortgages executed after its effective date. *See, e. g., Brine v. Insurance Co.*, 96 U.S. 627, 639, 24 L.Ed. 858 (1877); *Bronson v. Kinzie*, 42 U.S. (1 How.) 311, 321, 11 L.Ed. 143 (1843).

4. P.L.1963, ch. 418 §§ 2, 4, reduced the period of redemption to six months. After remaining in force only a few months this act was repealed, which had the effect of restoring the general one year period of redemption. P.L. 1963, ch. 434.

See, e. g., *Canal National Bank v. School Administrative District*, 160 Me. 309, 203 A.2d 734, 739 (1964); *Phinney v. Phinney*, 81 Me. 450, 460 (1889). Historically, it has been held that the legislature may modify the remedies available to contracting parties but cannot, constitutionally, alter the substantive obligations of the parties. *Richmond Mortgage & Loan Corp. v. Wachovia Bank & Trust Co.*, 300 U.S. 124, 128, 57 S.Ct. 338, 81 L.Ed. 552 (1937); *Waterville Realty Corp. v. City of Eastport*, 136 Me. 309, 313, 8 A.2d 898, 900 (1939). However, not every act that affects existing contracts contravenes constitutional principles. *Barton v. Conley*, 119 Me. 581, 112 A. 670, 672 (1921), aff'd 260 U.S. 677, 43 S.Ct. 238, 67 L.Ed. 456 (1923). The appropriate test in determining whether legislation impairs contractual obligations was stated in *Phinney v. Phinney*, 81 Me. at 461, *quoting Louisiana v. New Orleans*, 102 U.S. 203, 206–07, 26 L.Ed. 132 (1880):

"The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced,—by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of the means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened."

*Accord, Canal National Bank v. School Administrative District*, 160 Me. 309, 203 A.2d 734, 740 (1964). Thus, where a statute lessens the value of a contract to the parties, the constitutional prohibition has been violated. *See Bank of Minden v. Clement*, 256 U.S. 126, 128, 41 S.Ct. 408, 65 L.Ed. 857 (1921); *Barton v. Conley*, 119 Me. 581, 112 A. 670, 672 (1921), aff'd, 260 U.S. 677, 43 S.Ct. 238, 67 L.Ed. 456 (1923).

Whether a statute which *reduces* a mortgagor's period of redemption is constitutional has not been directly decided by the United States Supreme Court. However, in *Barnitz v. Beverly*, 163 U.S. 118, 16 S.Ct. 1042, 41 L.Ed. 93 (1896), the Court was confronted with a constitutional attack on a statute which *increased* the redemptive period available to mortgagors. In invalidat-

ing the statute as applied to mortgages executed prior to its effective date, the Court stated:

"[W]e hold that a statute which authorizes the redemption of property sold upon foreclosure of a mortgage, where no right of redemption previously existed, or which extends the period of redemption beyond the time formerly allowed, cannot constitutionally apply to a sale under a mortgage executed before its passage."

163 U.S. at 129, 16 S.Ct. at 1046. *Accord, Worthen Co. v. Kavanaugh*, 295 U.S. 56, 55 S.Ct. 555, 79 L.Ed. 1298 (1935); *Brine v. Insurance Co.*, 96 U.S. 627, 24 L.Ed. 858 (1877); *Howard v. Bugbee*, 65 U.S. (24 How.) 461, 16 L.Ed. 753 (1860); *Bronson v. Kinzie, supra.*

In *Phinney v. Phinney, supra*, this Court relied on *Bronson v. Kinzie, supra*, in striking down a statute which expanded the right of redemption for creditors of a mortgagor.

In *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, the Court upheld a Minnesota statute which temporarily extended the period of redemption available to defaulting mortgagors. The case arose in the context of "the Great Depression" of the 1930s, and it is now recognized that the Court's holding in *Blaisdell* was based on the emergency which then existed. *See W. B. Worthen Co. v. Thomas*, 292 U.S. 426, 432–33, 54 S.Ct. 816, 78 L.Ed. 1344 (1934); *Waterville Realty Corp. v. City of Eastport, supra.*

There are, however, a series of Supreme Court cases which, at first glance appear to hold that a state may modify a mortgagor's right of redemption without offending constitutional requirements.

*Aikins v. Kingsbury*, 247 U.S. 484, 38 S.Ct. 558, 62 L.Ed. 1226 (1918), involved a contract to purchase state land. After the contract had been executed, a new statute was enacted which changed the right of the purchaser to redeem the property after default. In upholding the statute the Court stated:

"The right of the State to foreclose such a contract for default in payment, and the right of the purchaser to redeem after a default decree, relate to the remedy as distinguished from the obligation of the contract, and both of these rights are constitutionally subject to modification by the State, within limits which were not exceeded in the act before us . . . ."

247 U.S. at 487–88, 38 S.Ct. at 559, *citing Waggoner v. Flack*, 188 U.S. 595, 23 S.Ct. 345, 47 L.Ed. 609 (1903); *Wilson v. Standefer*, 184 U.S. 399, 22 S.Ct. 384, 46 L.Ed. 612 (1901).

More recently, in *City of El Paso v. Simmons*, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965), the Court upheld a Texas statute which reduced the period within which a purchaser of state lands may reinstate his claim after forfeiture. A 1910 statute permitted reinstatement at any time after forfeiture. In 1941 the Texas legislature reduced this reinstatement period to five years after forfeiture. If the purchaser did not cure his default, the land was to be sold, and the proceeds from the sale deposited in the school fund. 379 U.S. at 498, 85 S.Ct. at 578. The Court did not concern itself with whether the right of reinstatement was a mere "remedy" or an "obligation." 379 U.S. at 506, 85 S.Ct. at 582–83, n. 9. Rather, the Court employed a balancing test in determining whether the statute contravened the contract clause. In upholding the validity of the statute the Court recognized

"the State's vital interest in administering its school lands to produce maximum revenue and in utilizing its properties in ways best suited to the needs of a growing population. The uncertainty of land titles, the massive litigation to which this gave rise, and the pattern of sale and forfeiture were quite costly to the school fund and to the development of land use. Timeless reinstatement rights prevented the State from maintaining an orderly system of land sales and the resultant confusion impeded the effective disposi-

tion of lands and utilization of mineral wealth within them."

379 U.S. at 515–16, 85 S.Ct. at 587–88.

Plaintiff-appellee suggests that the holding in *El Paso v. Simmons, supra,* should control the disposition of this case.

We do not understand *El Paso v. Simmons* to say that a state may at will reduce the period of redemption available to a defaulting mortgagor without violating the provisions of the contract clause. A state certainly has an important interest in disposing of public lands. In *El Paso v. Simmons, supra,* as in *Aikins v. Kingsbury, supra, Waggoner v. Flack, supra,* and *Wilson v. Standefer, supra,* the interest of the state in clearing the title to public lands was a significant element in the Court's decision. No such consideration is present in the instant case.

Does an act which substantially reduces the period of redemption available to a defaulting mortgagor unconstitutionally impair contractual obligations when applied retroactively? While we have not had occasion to address this precise issue, we note that dictum in *Kennebec & Portland R. R. Co. v. Portland & Kennebec R. R. Co.,* 59 Me. 9, 38–39 (1871), indicates that such an act would be invalid:

"It is common learning, that the legislature may change at will remedies, but cannot impair rights or obligations. It might, probably, be seriously questioned whether the legislature could constitutionally abridge the time of redemption existing by statute at the time the mortgage was given, say from three years to one year. This would be taking away a fixed right, one that existed when the contract was made, given by the statute law of the State. It would take away two years' time, and give nothing in lieu or exchange . . . ."

Several decisions from other jurisdictions have held that legislative attempts to curtail retroactively a mortgagor's right of redemption are invalid. *California Federal Sav. & Loan Ass'n v. Allen,* 112 P.2d 959, 960 (Cal.App.1941), *appeal dismissed because of mootness,* 19 Cal.2d 85, 119 P.2d

137, 138 (1941); *State ex rel. Cleveringa v. Klein*, 63 N.D. 514, 249 N.W. 118, 122 (1933). *Cf. Prideaux v. Des Moines Joint-Stock Land Bank*, 34 F.2d 308, 310 (D.C.Minn. 1929). *But see State Nat. Bank of Texarkana v. Morthland*, 196 Ark. 346, 118 S.W.2d 266, 268 (1938).[5]

Having in mind this background, we now approach the problem raised by the attempted foreclosure procedure here under review. P.L.1975, ch. 552, §§ 6321–25, established a basic redemption period of ninety days. Balanced against this reduced period of redemption from the one year allowable when the mortgage was executed, is the right to be heard in court on the issue of default and, additionally, a right for a determination of the amount then due, neither of which was possible under the other existing methods of foreclosure. The 1975 statute likewise entitled the mortgagor to any surplus received from the sale of the mortgaged property beyond the mortgage debt. Arguably, this statute granted these heretofore non-existent rights as the quid pro quo for reducing the time of redemption from one year to ninety days. Despite these arguably beneficial conditions, we are not convinced that the loss in the period of redemption is balanced by the benefits we have described.

■ In 1972 when this mortgage was executed the defendant had every right to believe that she would have a redemption period of one year should there be a default and a foreclosure of her mortgage. Since that was the law at that time, the one year period of redemption was as much a part of the mortgage then executed as though it had so stated in precise language.

We do not believe that it is appropriate to classify the time span in which redemption may be had as merely remedial. The right of redemption has been described as

"one of the most splendid instances, in the history of our jurisprudence, of the

triumph of equitable principles over technical rules; and of the homage which those principles have received, by their adoption in the Courts of law."

*Wilkins v. French*, 20 Me. 111, 118 (1841). This equitable principle is well defined and firmly entrenched in the legal tradition of this State. *See Kennebec & Portland R. R. Co. v. Portland & Kennebec R. R. Co.*, 59 Me. at 29–30; *Fogg v. Twin Town Chevrolet*, 135 Me. 260, 194 A. 609 (1937).

However, granting the importance of the right of redemption, we must still face the issue of whether *one year* in which to redeem is also such a significant right that constitutionally it cannot be retrospectively reduced. We may agree that a reduction in the period of redemption is permissible retrospectively, provided that it is balanced with an equally effective remedy for exercising the right of redemption. Absent such a provision, the reduction is impermissible constitutionally. *Richmond Mortgage & Loan Corp. v. Wachovia Bank & Trust Co.*, 300 U.S. at 128–29, 57 S.Ct. 382.

In Maine, as we have indicated, a period of not less than one year in which to redeem under a real estate mortgage foreclosure can be statutorily traced from 1837. Although we are not here concerned with a question of whether it was legislative intent that the 1975 law be applied retrospectively,[6] it is interesting to note that when the Legislature in 1963 temporarily reduced the period of redemption from one year to six months, the act was made to apply prospectively only with reference to the various methods of foreclosure then permissible.

More recently we have used language which recognizes the solemnity of statutory provisions equating the period of redemption equally with the right of redemption. In *Smith v. Varney*, 309 A.2d 229, 232 (Me. 1973), we said:

Rather, the legislation specified when the period began to run.

---

**5.** We note that the decision in *Mount Morris Sav. & Loan Ass'n v. Barber*, 17 Ill.2d 523, 162 N.E.2d 347 (1959), is inapposite. In *Mount Morris* the statute in question did not attempt to change the length of the redemption period.

**6.** *See Langley v. Home Indemnity Co.*, 272 A.2d 740, 744 (Me.1971).

"This right of redemption, once extinguished, cannot be revived by any court, *nor can the period of redemption be abridged or enlarged by operation of law.* Courts must abide by the statutory requirements except in exceptional cases where a court of equity may provide relief." (Emphasis supplied.)

We are aware that in large part Maine is a rural state and in significant measure its economy depends upon the production, harvesting and sale of agricultural produce, such as potatoes, blueberries, corn, peas, hay and grains. A farmer who has executed a real estate mortgage would be distinctly disadvantaged if, having only one annual source of income, his ability to redeem from a mortgage foreclosure is compressed into a ninety day period. We have no way of knowing how many agricultural mortgages may be now outstanding which were executed prior to the 1975 enactment, but we have every right to assume that the number would be considerable. Certainly as to those, a critical part of the mortgage contract would have been the right to redeem from the foreclosure in one year rather than limiting such right to ninety days.

For the reasons which we have enunciated, we now hold that the redemption provisions of P.L.1975, ch. 552, §§ 6321–25, are unconstitutional when applied to mortgages which were executed prior to the effective date of that statute, unless the mortgage contained language permitting foreclosure under any legal method existing at the time the mortgage became in default. *See Rendering Co. v. Stewart,* 132 Me. 139, 168 A. 100 (1933). Such language was not included within the mortgage given by the defendant to this plaintiff and, therefore, the attempted foreclosure by the plaintiff was constitutionally impermissible.

The entry is:

Appeal sustained.

All Justices concur.

DELAHANTY, J., did not sit.